ANDREW M. CALAMARI
REGIONAL DIRECTOR
Attorney for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
3 World Financial Center, Room 400
New York, New York 10281
(212) 336-0085 (Gerald Gross)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> ZURICH FINANCIAL SERVICES, : <br> : <br> Defendant. : | 08 Civ. 10760 (WHP) <br> ECF Case |

---

### PLAINTIFF'S MEMORANDUM IN RESPONSE TO THE CLAIMS ADMINISTRATOR'S REQUEST FOR PAYMENT OF FEES

Plaintiff Securities and Exchange Commission respectfully submits this memorandum in response to the request by the Claims Administrator, The Garden City Group, Inc. ("GCG"), for payment of $5,000 in fees and expenses in connection with the second distribution to approved claimants. On March 3, 2014, GCG filed its Report Certifying Second Distribution and Request for Payment of Fees ("Report"). In the Report, GCG informed the Court that it completed the second distribution to 231 claimants who were eligible for a total of $333,689.50. As part of the Report, GCG requested payment of $5,000 for fees and expenses relating to the second distribution. GCG's invoice identified $6,617.70 in fees and $221.15 in expenses, for a total of

$6,838.85. However, GCG discounted the $6,838.85 amount to $5,000 because GCG had previously estimated $5,000 to complete the second distribution. To evaluate GCG's request, the Commission staff conducted a line by line audit-like review of the details supporting its invoice. The Commission staff believes that GCG's work was necessary and appropriate to the success of the second distribution. Therefore, the Commission believes that GCG's request is reasonable.

**Background**

On February 2, 2009, the Court entered Final Judgment as to Defendant Zurich Financial Services ("Zurich") in this action pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. (Dkt. 2)[1] Pursuant to the Final Judgment, on February 4, 2009, Zurich paid a total of $25,000,001. On February 9, 2010, the Court entered an order: (1) creating a Fair Fund under Section 308 of the Sarbanes-Oxley Act; (2) appointing GCG as Claims Administrator; (3) appointing Damasco & Associates LLP ("Damasco") as Tax Administrator; and (4) approving the Distribution Plan. (Dkt. 18) On August 21, 2012, the Court entered an order ("Distribution Order"), which among other things, authorized payment of $1,003,162.01 to GCG in previously incurred fees and expenses and ordered the distribution of $23,925,940.75 to 1,375 approved claimants. (Dkt. 59) On September 19-20, 2012, GCG distributed the $23,925,940.75 as ordered. (Dkt. 62) On June 19, 2013, GCG reported completion of the distribution as authorized by the Distribution Order to all approved claimants except for those whose checks were: (i) returned as undeliverable and GCG could not identify contact information ($5,345.64); (ii) remained un-cashed despite notices to do so ($9,292.71); and (iii) returned as unwanted ($299,410.18). (Dkt. 71)

---

[1]     The motion references the docket of this action ("Dkt. __") and the attached Declaration of Liora Sukhatme, dated March 6, 2014 ("Sukhatme Decl. __").

2

On October 21, 2013, Court entered an order ("Second Distribution Order"), which among other things: (1) authorized payment of $62,453.84 to GCG for payment of fees and expenses incurred by GCG from September 1, 2012 through April 30, 2013; (2) directed GCG to conduct a second distribution of $333,689.55 to previously approved claimants on a *pro rata* basis, applying a $100 minimum distribution amount and excluding claimants who returned or did not cash checks in the initial distribution; (3) directed GCG to submit a report to the Court within 90 days of the second distribution; (4) authorized GCG to make an application to pay its additional fees and expenses and to transfer the remaining funds to the Commission; and (5) authorized the Commission to make an application to pay the tax liabilities and fees of the Tax Administrator and to transfer the remaining funds to the United States Treasury.

**The Second Distribution**

In the second distribution, GCG determined that 231 claimants were eligible for a total of $333,689.50[2] and caused checks to be mailed on December 3, 2013. Since then, GCG worked with claimants to assist them in cashing their checks. On January 21, 2014, GCG filed its fourteenth quarterly status report, (Dkt. 79), and on March 3, 2014, GCG filed the Report. (Dkt. 80) Of the $333,689.50 distributed in the second distribution, only 13 checks totaling $10,500.74 remain uncashed, and of these uncashed checks, GCG anticipates that two checks, recently re-issued and totaling $8,058.42, will be cashed within a few days. (Dkt. 80 at 2)

**The Commission Believes That GCG's Fees And Expenses Are Reasonable**

On February 28, 2014, GCG submitted to the Commission staff an invoice for its fees and expenses for the period October 15, 2013 to February 15, 2014. (Sukhatme Decl., ¶2) In its invoice, GCG identified $6,617.70 in fees and $221.15 in expenses, for a total of $6,838.85.

---

[2] This amount was $0.05 less than the amount authorized by the Second Distribution Order due to rounding. (Dkt. 80 at 2, n. 1)

3

However, GCG discounted this amount and has requested payment of only $5,000 because GCG had previously estimated $5,000 to complete the second distribution. (Dkt. 80 at 2; Sukhatme Decl., ¶2) GCG provided the details of GCG's work associated with the requested fees and expenses. (Dkt. 80-1; Sukhatme Decl., ¶4) GCG's work related to the second distribution, among other things, calculating the distribution amounts, verifying and sending payments, handling claimant inquiries about payments, attempting to contact claimants who had not cashed their checks, re-issuing checks when appropriate, and administering the second distribution since the entry of the Second Distribution Order. (Sukhatme Decl., ¶2) GCG also reported that in its view, the work was necessary and that the fees and expenses were reasonable. (Dkt. 80 at 3)

The Commission staff conducted a line by line audit-like review of the details of GCG's invoice and reviewed each entry. In this review, the staff determined that there were no entries that were vague or of questionable productivity, and the fees did not appear excessive in relation to the work performed or in the nature of possible overhead that should not be billed. (Sukhatme Decl., ¶4) The staff found the fees and expenses to be necessary and appropriate to completing the distribution. (Sukhatme Decl., ¶6) In addition, GCG discounted its request from $6,838.85 to $5,000 so that its request did not exceed the estimate it previously provided. Accordingly, the Commission believes that GCG's proposed fee application is reasonable.

### The Remaining Funds Should Be Transferred To The Commission

According to GCG, as of March 5, 2014, the Fair Fund balance was $23,747.72. (Sukhatme Decl., ¶7) If the claimants cash the two checks totaling $8,058.42, and if the Court approves GCG's $5,000 request, the Fair Fund balance would be reduced to $10,689.30. After deciding GCG's fee request, the Court should direct GCG to transfer the balance of the Fair Fund to the Commission as requested by the Report. After Damasco files the Fair Fund's 2014

4

tax return, the Commission will seek Court approval to pay Damasco's fees and to transfer the remaining funds to the United States Treasury.

**Conclusion**

For all the foregoing reasons, the Commission submits that the $5,000 in fees and expenses sought by GCG are reasonable.

Dated: New York, New York

March 6, 2014

Respectfully submitted,

By: /s/ Gerald A. Gross
GERALD A. GROSS

New York Regional Office
3 World Financial Center, Room 400
New York, New York 10281-1022
Tel.:  212-336-0085 (Gross)
Fax:   212-336-1322
E-mail:  grossg@sec.gov